IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TEX PICKRON                                                          PLAINTIFF

v.                          Case No. 3:12-CV-03122

TANKINETICS, INC.; STRAND
COMPOSITE ENGINEERING &
CONSTRUCTION, LLC; WILLIAM K.
ANGLE; ST. CLAIR P. GUESS, III;
WILLIAM F. SCHWARZ; and
ROBERT W. McMANUS                                                   DEFENDANTS

## OPINION AND ORDER

Defendants Tankinetics, Inc. ("Tankinetics"); Strand Composite Engineering &

Construction, LLC ("Strand"); William K. Angle ("Angle"); St. Clair P. Guess, III ("Guess");

William F. Schwarz ("Schwarz"); and Robert W. McManus ("McManus") move to dismiss the

complaint on grounds of insufficient service of process, lack of personal jurisdiction, and failure to

state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6),

respectively.  Before the Court are Defendants' motion to dismiss (Doc. 9) and brief in support (Doc.

10), Plaintiff's response in opposition (Doc. 13), and Defendants' reply (Doc. 14).[1]  For the reasons

stated herein, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

### I.  Background

On September 18, 2012, Plaintiff filed a complaint (Doc. 1) in this Court, alleging age

discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §

---

[1] The Court has considered Defendants' reply even though it was filed without leave of court.
*See* Local Rule 7.2(b) (indicating that the only reply that may be filed without leave of Court is a
reply to a response to a motion for summary judgment).

621, and claims of promissory estoppel, constructive fraud, and negligent supervision under Arkansas common law.  He named as defendants two domestic entities—Tankinetics and Strand—as well as four individuals who served in various capacities as owners, directors, and officers of Tankinetics and/or Strand.  As to the entities, Plaintiff alleges that Tankinetics is the "principal" of "Agent Separate Defendant Strand."  (Doc. 1, p. 3).  Defendant Angle is alleged to be the owner and President of Tankinetics, and the owner and Chairman of the Board of Strand.  Defendant Guess is alleged to be a director and President of Strand.  Defendant Schwarz is alleged to be a director and Vice-President of Tankinetics and a director, Executive Vice-President, and Chief Financial Officer of Strand.  Finally, Defendant McManus is alleged to be a Vice-President of Strand.  The Court notes that Plaintiff's general allegations refer to all six Defendants collectively as his employer, which causes some confusion.  Although Plaintiff alleges he "held the position of Plant Manager for Tankinetics and later for both Strand and Tankinetics,"  (Doc. 1, p. 3), it appears to the Court that the events giving rise to Plaintiff's causes of action happened during the course of Plaintiff's direct employment by Strand, and all other Defendants are alleged to be Plaintiff's "employer" because of an alleged agency relationship with Strand.[2]

The relevant facts, as alleged by Plaintiff in the complaint, are as follows:  Plaintiff Tex Pickron is a 65-year-old man who worked for Defendants in a variety of positions from January 10,

---

[2] This conclusion is based on the fact that the Equal Employment Opportunity Commission Dismissal and Notice of Rights letter, attached to the complaint, lists Strand as a recipient, as well as the fact that Guess—the only Defendant alleged to have had any direct involvement with Plaintiff's employment and/or termination—is alleged to have been a director and President of Strand, but is not alleged to have held a position or had any connection with Tankinetics.

1972, until October 3, 2011.[3]  From 1995 until 2010, Plaintiff served as fabrication Plant Manager. In 2009, Plaintiff trained Clint Broome, a new employee in his mid-thirties.  Mr. Broome was hired at a pay rate of $85,000 per year, while Plaintiff was earning only $68,000 per year.  After bringing the salary discrepancy issue to Guess, Plaintiff successfully negotiated a raise to $80,000 per year. Some time later, Guess told Plaintiff that Plaintiff's expertise was needed in a different department. Plaintiff, who was 63 years old at the time, was reluctant to switch departments.  Guess then made an oral promise to Plaintiff that he would have employment with the company to and beyond the time Plaintiff reached 66 years of age.  Plaintiff switched to the Engineering and Estimating Department ("E&E") in August of 2010, and Mr. Broome assumed the position of fabrication Plant Manager a few weeks later.  Plaintiff's supervisor in the new department, Paul DiCarlo ("DiCarlo"), expressed satisfaction with Plaintiff's job performance.

Upon returning from vacation on October 3, 2011, Plaintiff was called to a meeting with Guess and DiCarlo.  At the meeting, Guess informed Plaintiff that his position was being eliminated. While Plaintiff was leaving the facility, Graham Keymer ("Keymer"), another employee, told Plaintiff that Keymer was instructed by Defendants' management to terminate "old hands."  Plaintiff contends that two individuals, one in his mid-thirties and one in his mid-forties, subsequently replaced him in E&E and perform similar duties to those performed by Plaintiff.

Defendants move to dismiss the complaint on the following grounds: (1) Defendants Angle and McManus were not properly served with process; (2) this Court lacks personal jurisdiction over Angle and McManus; (3) Plaintiff failed to state a claim for relief against the individual defendants

---

[3] Plaintiff alleges he worked for Defendants "from his hire date to his termination date in late 2010 except for two intermittent years in the 1990s."  (Doc. 1, p. 1).  The Court assumes this termination date to be an inadvertent error, and should be 2011.

and Tankinetics under the ADEA; and (4) Plaintiff failed to state a claim for relief as to all common-law claims.  Plaintiff responded in opposition, maintaining that the complaint sufficiently sets forth a cause of action for negligent supervision and asserting that Defendants are requesting premature relief, individuals may be held liable under the ADEA, and Tankinetics is liable under the ADEA because it is an "integrated enterprise" with Strand.[4]  The Court's discussion below begins with Defendants' threshold challenges to service of process and personal jurisdiction, and then addresses the sufficiency of Plaintiff's allegations as to each cause of action.

## II. Discussion

### A.  Insufficient Service of Process under Rule 12(b)(4)

Defendants seek dismissal of all claims against Angle and McManus due to ineffective service of process, as Plaintiff attempted to serve each of them via certified mail at a former address, without delivery restricted.  Service of process by certified mail of a pleading must comply with Rule 4 of the Arkansas Rules of Civil Procedure (Local Rule 4.1(b)), which requires delivery to be restricted to the addressee or an agent thereof who is specifically authorized in writing as the addressee's agent to receive mail.  Ark. R. Civ. P. 4(e)(3), (d)(8)(A)(i); *Wilburn v. Keenan Cos.*, 768 S.W.2d 531, 532 (Ark. 1989) ("[T]he term 'restricted delivery' denotes a very specific delivery procedure within the postal service.  ARCP Rule 4(e)(3) requires the use of that procedure if service is to be made by mail.").  "It is the plaintiff's burden to prove proper service once it is contested." *Brinkley v. City of Helena-West Helena*, 2012 U.S. Dist. LEXIS 151281, at *8 (E.D. Ark. Oct. 22, 2012).

---

[4] In his response, Plaintiff did not address Defendants' arguments regarding his promissory estoppel and constructive fraud claims.

The Court finds that Plaintiff did not effect proper service on Angle or McManus.  Nothing in the record indicates that Plaintiff complied with the proper procedure for serving an out-of-state defendant by mail, or that these Defendants otherwise waived service.   Plaintiff did not file the required affidavit of proof of service for either Angle or McManus, nor did he file a copy of the return receipt for service on Angle.  *See* Fed. R. Civ. P. 4(l)(1) (requiring proof of service to the court); Local Rule 4.1(c) (requiring an affidavit reflecting completion of service and a copy of the return receipt when service is made by certified mail).   Both Angle and McManus provided affidavits stating that they received notice of the lawsuit from their ex-wives and that they do not consent to jurisdiction or waive service.  Although Plaintiff filed a response to Defendants' motion to dismiss, Plaintiff failed to even address Defendants' argument regarding insufficient service of process.  There is no evidence that Plaintiff directed the mail to be sent with restricted delivery, nor is there evidence that the mail was received and signed for by an authorized agent.  Furthermore, McManus affirmatively states that his ex-wife, whose signature appears on the return receipt, is not his agent and was not authorized to accept service on his behalf. (Doc. 9-3).

Accordingly, Defendants' motion to dismiss for insufficient service of process will be granted as to Angle and McManus.  Were it not for incurable defects in Plaintiff's claims on other grounds, the Court would give Plaintiff leave to attempt to cure the defects in service of process.  However, since the claims against Angle and McManus are fatally flawed on other grounds, granting Plaintiff leave to cure would be futile.

### B.  Lack of Personal Jurisdiction under Rule 12(b)(2)

Defendants also move for dismissal of all claims against Angle and McManus due to lack of personal jurisdiction.  "To allege personal jurisdiction, 'a plaintiff must state sufficient facts in

the complaint to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state.'" *Wells Dairy, Inc. v. Food Movers Int'l*, 607 F.3d 515, 518 (8th Cir. 2010) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)) (internal quotations and alterations omitted). The court "must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). When jurisdiction is challenged, the plaintiff has the burden of proving sufficient facts to support a prima facie showing of personal jurisdiction. *Wells Dairy*, 607 F.3d at 518. "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Id.*

For this Court to have personal jurisdiction over a non-resident defendant, the defendant must be within reach of Arkansas' long-arm statute, and the exercise of jurisdiction must comport with constitutional due process. *Wells Dairy*, 607 F.3d at 518. Arkansas' long-arm statute allows jurisdiction to the maximum extent permitted by due process, so the main inquiry is whether the exercise of jurisdiction is constitutionally valid. *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011). "Due process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)). A defendant's contacts with the forum must arise because the defendant has 'purposefully availed' itself of the privilege of conducting activities in the state." *Pangaea*, 647 F.3d at 745.

Personal jurisdiction may be based on either conduct by the defendant in the forum state that

gives rise to the cause of action (specific jurisdiction), or the defendant's general contacts with the forum state (general jurisdiction). *Id.* General jurisdiction refers to the power of a court to hear a lawsuit against a defendant who has "continuous and systematic" contacts with the forum state such that it is fair to require the defendant to litigate there, even though the suit is unrelated to the defendant's contacts with the forum. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). Specific jurisdiction exists when a defendant purposefully directs its activities at the forum state, and the lawsuit "relates to" or "arises from" those activities. *Johnson v. Arden*, 614 F.3d 785, 794–95 (8th Cir. 2010). "The exercise of specific jurisdiction requires less contact both in the quantity and quality with the forum state because the conflict itself has some connection to the forum state." *Capital Equip., Inc. v. CNH America, LLC*, 394 F. Supp. 2d 1054, 1055 (W.D. Ark. 2005).

To determine whether the constitutional threshold for either general or specific personal jurisdiction has been met, the Eighth Circuit analyzes the following factors: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. *Id.* "The first three factors are considered primary; the latter two are of secondary importance," and the third factor only applies to specific jurisdiction inquiries. *Id.* However, "[the court] must look at all of the factors in the aggregate and examine the totality of the circumstances in making a personal jurisdiction determination." *Johnson*, 614 F.3d at 794–95.

In the complaint, Plaintiff does not assert that either general or specific jurisdiction exists. Rather, Plaintiff alleges this Court has jurisdiction over Angle and McManus "as 'persons' under

29 U.S.C. § 630(a), and 'agents' of [Tankinetics and Strand] under 29 U.S.C. § 630(a)(1)."[5] Section 630(b) defines an "employer" for the purposes of determining who may be liable under the ADEA. The Court rejects the implication that defining an employer for ADEA purposes can confer personal jurisdiction over a defendant.  ADEA liability and personal jurisdiction are separate issues, and an individual's status as an officer or director of a corporation that is subject to personal jurisdiction does not automatically confer personal jurisdiction over the individual.  *See Keeton v. Hustler Magazine*, 465 U.S. 770, 781, n.13 (1984) (noting that "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him" and emphasizing, "[e]ach defendant's contacts with the forum State must be assessed individually").  The only other allegation in the complaint relevant to jurisdiction is the general assertion that Angle and McManus "conducted business" in Arkansas.  Aside from the foregoing, Plaintiff failed to allege or even argue that personal jurisdiction exists over Angle and McManus.

After reviewing the pleadings, affidavits, and attachments filed by the parties, the Court concludes that Plaintiff failed to allege that either Angle or McManus has sufficient contacts with Arkansas to support the exercise of general personal jurisdiction.  Angle is a Washington citizen who resides and is domiciled in that State, owns no real property in Arkansas, and has no bank accounts in Arkansas.  His known contacts with Arkansas are his former associations with Strand (as a director and shareholder) and Tankinetics (as president), and his brief time visiting the State in the last year.  McManus is a resident of Georgia whose only known contact with Arkansas is his former position as vice president of Strand. There is no proof that McManus had any direct contacts with Arkansas, and the only proof that Angle had direct contact is his own statement that he briefly

---

[5] As there is no § 630(a)(1), the Court assumes Plaintiff is referring to § 630(b)(1).

visited in the past year.  The evidence presented shows that Angle and McManus only "conducted business" in Arkansas indirectly in their capacities as agents or employees of Strand and/or Tankinetics, not in their individual capacities.  The derivative nature of these limited contacts falls far short of the required "continuous and systematic" nature sufficient to justify general jurisdiction.

Additionally, the Court finds that Plaintiff has failed to allege and prove any jurisdictional facts connecting either Angle or McManus to the events giving rise to this lawsuit, and therefore there is no basis for specific jurisdiction.  Guess avers that he alone made the decision to discharge Plaintiff and terminate his position, and neither Angle nor McManus were involved in that decision. (Doc. 9-1, p. 2).  Also, Angle and McManus each state that they had no role in the discharge of Plaintiff and neither Defendant was aware of the discharge until after it happened.  Plaintiff submitted no proof to indicate otherwise.  Therefore the Court must conclude, on the strength of Defendants' uncontroverted declarations, that Angle and McManus were not involved in the decision to terminate Plaintiff's employment.  *See Wells Dairy*, 607 F.3d at 518 ("If the defendant controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction.").  The only factual connection between Plaintiff and these Defendants is that Angle and McManus—among others—were officers or otherwise agents of Plaintiff's employer.  This connection, without more, does not provide a sufficient legal connection to confer jurisdiction.  *See Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 943 F. Supp. 1117, 1125 (D. Minn. 1996) ("Assuming [defendant corporate officer] could be individually liable *if* he personally directed fraudulent corporate actions, [the court] cannot assert jurisdiction over him without allegations that he in fact did so or other evidence of minimum contacts with the forum."); *Lane v. Lucent Tech.*, 388

-9-

F. Supp. 2d 590, 594 (M.D. N.C. 2005) (finding no specific personal jurisdiction over employer's human resources representative in an ADEA/Title VII case, where defendant's only connection to the claims was that she was the employee who responded to the plaintiff's internal discrimination claims and the plaintiff's EEOC charges).

Although Plaintiff failed to offer any affidavits or supporting factual information in his response to Defendants' motion, Plaintiff contends that the motion seeks premature relief and should be denied or deferred to allow time for discovery. Jurisdictional discovery is properly denied "'when a plaintiff offers only speculation or conclusory assertions about contacts with a forum state.'" *Viasystems, Inc. v. EBM-Papst St. Georgen GMBH & Co.*, 646 F.3d 589, 598 (8th Cir. 2011) (quoting *Dever*, 380 F.3d at 1074 n.1). The Court finds that Plaintiff has not alleged more than mere speculation as to Angle's and McManus's contacts with Arkansas. Plaintiff has provided no documentary evidence that supports a claim of personal jurisdiction over these two defendants. *Cf. Steinbuch v. Cutler*, 518 F.3d 580, 588–89 (8th Cir. 2008) (holding district court's refusal to allow jurisdictional discovery was abuse of discretion where plaintiff had "offered documentary evidence, and not merely speculations or conclusory allegations"). For these reasons, Plaintiff's request for limited jurisdictional discovery is without merit and will be denied.

In sum, the Court finds that Plaintiff has failed to make a prima facie showing that Angle and McManus each have sufficient contacts with Arkansas to support this Court's exercise of personal jurisdiction. Not only did Plaintiff fail to assert a legitimate basis for personal jurisdiction in the complaint, but Plaintiff did not even attempt to argue that jurisdiction is proper after Defendants raised the issue. Plaintiff has wholly failed to come forward with any facts from which the Court could conclude that personal jurisdiction exists. Thus, the Court concludes that it would violate due

process to exercise personal jurisdiction over Angle and McManus solely on the basis of their limited and attenuated contacts with Arkansas. Therefore, Defendants' motion to dismiss for lack of personal jurisdiction over Angle and McManus is granted, and the case should be dismissed without prejudice as to these Defendants.

### C.  Failure to State a Claim under Rule 12(b)(6)

The complaint alleges four discrete causes of action: Count I alleges age discrimination under the ADEA against Defendants collectively; Counts II and III allege promissory estoppel breach of contract and constructive fraud claims against Guess, who was acting on behalf of all Defendants; and Count IV alleges a negligent supervision claim against Tankinetics and Strand. Defendants move for dismissal for failure to state a claim for relief under the ADEA against Tankinetics and the individual Defendants, and failure to state a claim for relief as to the common law claims of constructive fraud, promissory estoppel, and negligent supervision. Plaintiff argues Tankinetics is an employer because it is an "integrated enterprise" with Strand, statutory construction of the ADEA imposes liability on individual Defendants, and his complaint sufficiently states a claim for negligent supervision. The Court discusses the sufficiency of each claim below.

A pleading that states a claim for relief must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides an avenue for dismissal of a pleading on grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In ruling on a 12(b)(6) motion, a court accepts as true all of the factual allegations contained in a complaint and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). The court is to consider only the pleadings and "materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (internal quotation omitted). Accordingly, the Court's analysis of Defendants' arguments for dismissal under Rule 12(b)(6) is limited to a review of the complaint and Plaintiff's EEOC Right-to-Sue letter, which is attached to the complaint as Exhibit 1. The affidavits and other materials submitted in support of Defendants' motion to dismiss on other grounds were not considered.

### 1. ADEA

Defendants seek to dismiss Plaintiff's ADEA claims against Tankinetics and the individual Defendants because they are not "employers" subject to ADEA liability. Under the ADEA, only "employers" are prohibited from discriminating against an employee on the basis of age. 29 U.S.C. § 623(a). Thus, to state facts necessary to a potential finding of liability, a plaintiff must assert that the defendants were "employers" as defined by the statute. The ADEA defines an "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . [and] any agent of such person." 29 U.S.C. § 630(b).

Plaintiff alleges that Tankinetics is an employer, as defined by the ADEA, and the "principal of Agent Separate Defendant Strand." (Doc. 1, p. 2). He also alleges that he worked for Tankinetics

in a variety of positions over a period of many years.  Defendants admit that Tankinetics is *an* employer under the ADEA, but they argue Tankinetics was not *Plaintiff's* employer and therefore cannot be held liable.  Defendants also argue that there are no allegations Tankinetics directed or influenced Strand to discharge Plaintiff.  (Doc. 10, p. 7).  As explained above, when ruling on a motion to dismiss under Rule 12(b)(6), the Court is limited to examining the complaint to determine whether sufficient facts have been set forth by Plaintiff that, if proven true, would entitle the plaintiff to relief.  Any further inquiry into the factual or legal sufficiency of such allegations is not appropriate at this time.  Whether Tankinetics was actually Plaintiff's employer—either directly or through an agency relationship with Strand—and whether Tankinetics affected Plaintiff's termination in any way are factual disputes that are potentially relevant at the summary judgment or trial stage of the proceedings.  For now, the Court cannot and will not engage in an analysis of disputed facts, and instead must assume the facts as stated by Plaintiff to be true.  Therefore, solely for the purpose of ruling on Defendants' motion to dismiss under Rule 12(b)(6), the Court will assume Tankinetics was Plaintiff's employer.  Based on this assumption, Tankinetics fits within the statutory definition of an "employer," and therefore Plaintiff has stated a plausible claim for relief under the ADEA against Tankinetics.

In the second part of their argument for dismissal of Plaintiff's ADEA claims, Defendants assert that the individual Defendants are not liable as "employers" because individuals cannot be held personally liable under the ADEA.  In the complaint, Plaintiff alleges that the individual Defendants are liable as agents of his employer under § 630(b).  He further alleges that each individual defendant had the ability to make personnel decisions and is an "employer" under the ADEA.  (Doc. 1, pp. 2–3).  After reviewing the complaint and relevant case law, the Court

-13-

concludes that Plaintiff failed to state a plausible claim under the ADEA against the individual Defendants because individuals cannot be held personally liable under the ADEA.

Plaintiff argues that statutory construction of the ADEA imposes liability on individual agents of an employer.  The Eighth Circuit has not specifically ruled on individual liability under the ADEA, but it has explicitly held that supervisors may not be held individually liable under Title VII, a similar federal discrimination statute.  *Spencer v. Ripley Cnty. State Bank*, 123 F.3d 690, 691–692 (8th Cir. 1997) (per curiam).  As Title VII and the ADEA define "employer" in a "substantially identical manner," *Lenhardt v. Basic Inst. Tech.*, 55 F.3d 377, 380 (8th Cir. 1995), it is likely that the Eighth Circuit would follow the majority rule.  *Accord Stevenson v. Brod Dugan Paint and Wall Coverings*, 934 F. Supp. 1131, 1133 (E.D. Mo. 1996) ("Although the Eighth Circuit has yet to definitely state that . . . individual liability cannot be imposed under . . . the ADEA, its holdings [in other cases] clearly indicate that such a holding will ultimately be made.").  Plaintiff has failed to cite any convincing legal authority or argument in support of his proposition, or to otherwise indicate that the Eighth Circuit would hold individuals personally liable under the ADEA, but not Title VII.  The Court finds Plaintiff's interpretation of the ADEA untenable, and agrees with the majority rule that liability under the ADEA cannot attach to individuals in their personal capacities.  *See, e.g.*, *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994) ("[W]e read § 630(b) as an unremarkable expression of respondeat superior—that discriminatory personnel actions taken by an employer's agent may create liability for the employer."); *Miller v. Maxwell's Int'l*, 991 F.2d 583, 587 (9th Cir. 1993) (referring to the numerosity requirement and noting, "[i]f Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees"); *see also Young-*

-14-

*Parker v. AT&T Mobility, LLC*, 2009 U.S. Dist. LEXIS 40472, at *1 (E.D. Ark. Apr. 29, 2009) ("Plaintiff's . . . ADEA claims against [defendant] fail as supervisors are not individually liable under . . . the ADEA.").

Because the Court has determined that individuals are not subject to liability under the ADEA, the Court finds that the complaint fails to state a plausible claim under the ADEA against Defendants Guess and Schwarz.[6]  Accordingly, the Court grants the motion to dismiss as to the ADEA claims against these Defendants.

### 2. Promissory Estoppel

Defendants contend that Plaintiff has failed to state a claim for promissory estoppel because Plaintiff has not alleged detrimental reliance and because enforcement of the alleged promise avoids no injustice.  Arkansas adheres to the black-letter law on promissory estoppel found in the Restatement (Second) of Contracts § 90, which provides, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."  *See DePriest v. AstraZeneca Pharmaceuticals, L.P.*, 351 S.W.3d 168, 179–80 (Ark. 2009).  A plaintiff "must prove that in good faith he relied on some act or failure to act by the other party and, in reliance on that act, suffered some detriment."  *K.C. Props. of N.W. Ark., Inc. v. Lowell Inv. Partners, Inc.*, 280 S.W.3d 1, 30 (Ark. 2008).

---

[6] As the Court has determined that it lacks personal jurisdiction over Defendants Angle and McManus, the Court's ruling is confined to the defendants over whom the Court has jurisdiction. However, if the Court did have personal jurisdiction over Angle and McManus, the Court would analogously dismiss the ADEA claims against them on grounds that the ADEA does not permit individual liability.

Plaintiff alleges the following facts in asserting his promissory estoppel claim: Guess, on behalf of all Defendants, orally promised Plaintiff continued employment for at least three years from August of 2010; Guess made the promise to induce Plaintiff to switch positions from Plant Manager to E&E; Plaintiff relied on the promise and moved to E&E; and finally, Plaintiff was terminated[7] prior to August of 2013. (Doc. 1, pp. 7–8). Other factual allegations indicate Plaintiff continued to work at Defendants' facility in Harrison and was making the same amount of money after he switched positions. Aside from the fact that Plaintiff left his position as Plant Manager and accepted a new position in E&E, the complaint is devoid of any allegations regarding other actions taken or opportunities foregone as a result of Plaintiff's reliance.

The Court finds that based on the foregoing allegations, the complaint fails to give rise to a plausible inference that Plaintiff is entitled to relief based on a theory of promissory estoppel. The complaint contains no facts suggesting that Plaintiff suffered a detriment by switching positions. *Cf. Scholtes v. Signal Delivery Serv., Inc.*, 548 F. Supp. 487, 492 (W.D. Ark. 1982) (noting that in the employment context, detrimental reliance "could be shown by establishing that plaintiff 'passed up' other favorable employment opportunities, for example, relocated at [the employer's] instance, or reasonably incurred certain expenses in reasonable reliance upon [the plaintiff's] continued employment"). While the complaint does allege that Plaintiff was terminated from employment prior to August 2013, there are no facts to indicate that by switching positions, he gave up any guaranteed duration of employment in his former position as Plant Manager. Based on the alleged

---

[7] The Court notes Plaintiff alleges he was "unjustly terminated," however, this is a legal conclusion that is not entitled to an assumption of truth. *Ashcroft*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

facts, it appears to the Court that Plaintiff was an at-will employee who could have been discharged from employment at any time, whether he was Plant Manager or working in E&E.  Furthermore, nothing in the complaint supports an inference that injustice can be avoided only by enforcing Defendants' promise.  Defendants' motion to dismiss Plaintiff's promissory estoppel claim should therefore be granted.

### 3. Constructive Fraud

Defendants argue that the complaint fails to adequately allege a claim of relief for constructive fraud.  The doctrine of constructive fraud is a variant of traditional fraud that is based upon "a breach of a legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others." *Born v. Hosto & Buchan, PLLC*, 372 S.W.3d 324, 332 (Ark. 2010).  The breach of such certain duties gives rise to a presumption of fraud—and thus constitutes constructive or "legal" fraud—even though the breaching party lacked any intent to deceive.  *See Bain v. Deal*, 475 S.W.2d 708, 713 (Ark. 1972) ("Constructive fraud, sometimes called legal fraud, is nevertheless fraud, although it rests upon presumption and rests less upon furtive intent than does moral fraud. It is presumed from the relation of the parties to a transaction or from the circumstances under which it takes place.").  Constructive fraud is a limited cause of action that applies only in certain situations where one has a particular legal or equitable duty, and "[a]bsent special circumstances or a special relationship between the parties, the doctrine does not apply." *TEC Floor Corp. v. Wal-Mart Stores*, 4 F.3d 599, 602 (8th Cir. 1993) (applying Arkansas law).  Accordingly, to survive a motion to dismiss for failure to state a claim for relief, a claimant must allege sufficient facts to indicate that the doctrine is applicable.  *See Born*, 372 S.W.3d at 332 (affirming dismissal of constructive fraud claim where the court could discern no duty owed by the

-17-

defendant to the plaintiff); *Wiseman v. Batchelor*, 864 S.W.2d 248, 250 (Ark. 1993) (same).

Plaintiff alleges the following factual underpinnings in support of constructive fraud: Guess, on behalf of all Defendants, falsely represented to Plaintiff that he would have employment until at least August of 2013; Guess did not know whether this representation was true, yet he asserted it as true; Plaintiff relied on the misrepresentation to his detriment; and Guess's misrepresentation was without moral guilt or evil intent.  (Doc. 1, p. 8).  The Court finds that these allegations fail to state a claim for relief under constructive fraud.  Plaintiff failed to allege even the mere existence—much less breach—of a legal or equitable duty owed by Defendants to Plaintiff, and the complaint does not otherwise provide a sufficient factual basis to support such allegations.  Moreover, Plaintiff's constructive fraud allegations are scarcely more than a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" that the Supreme Court has repeatedly deemed insufficient.[8]  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  A claim for fraud must include an assertion of damages incurred or there must be some factual foundation for such damages set out in the complaint.  Here, the Court observes no such allegations or factual basis.  The only grievance complained of is wrongful discharge from employment, and the Court fails to see how this allegation constitutes damages as a result of Plaintiff's reliance on any misrepresentation by Defendants.  The Court also has doubts that Plaintiff has alleged any misrepresentation of material fact that would give rise to a cause of action for constructive fraud, as Arkansas courts have consistently held that "promises of future conduct in a contractual setting [are] not misrepresentation[s] that give rise to fraudulent conduct."  *S. Cnty, Inc. v. First W. Loan Co..*, 871

---

[8] Under the Federal Rules of Civil Procedure, allegations of fraud or mistake must be pleaded with particularity.  Fed. R. Civ. P. 9(b).  However, the parties did not address the issue and Plaintiff's constructive fraud claim fails to meet even the lower standard of notice pleading.

S.W.2d 325, 327 (Ark. 1994) (statement that lender could get developer some financing was not a commitment to do so, but even if it were, it could not support a claim for constructive fraud); *P.A.M. Transport, Inc. v. Ark. Blue Cross & Blue Shield*, 868 S.W.2d 33, 36 (Ark. 1993) (listing cases).

Because the complaint lacks a sufficient basis for the Court to conclude that constructive fraud applies in this case and fails to adequately allege any damages, Plaintiff's constructive fraud claim must be dismissed.

### 4. *Negligent Supervision*

Defendants argue Plaintiff failed to state a claim for negligent supervision. In the complaint, Plaintiff alleges that Tankinetics and Strand are liable for their negligent supervision of Guess, Schwarz, and McManus. Under Arkansas law, an employer is subject to direct liability for the negligent supervision of "unfit, incompetent, or unsuitable employees" whose tortious conduct injures a third party. *Sparks Reg'l Med. Ctr. v. Smith*, 976 S.W.2d 396, 397 (Ark. Ct. App. 1998) (quoting 27 Am. Jur. 2d *Employment Relationship* § 472 (1996)). However, an employer is not liable for negligently supervising an employee whose conduct is outside the scope of the employment unless the employee's conduct was foreseeable to the employer. *Regions Bank & Trust v. Stone Cnty. Skilled Nursing Facility, Inc.*, 49 S.W.3d 107, 115 (Ark. 2001). An employer's liability "rests upon proof that the employer knew or, through the exercise of ordinary care, should have known that the employee's conduct would subject third parties to an unreasonable risk of harm." *Madden v. Aldrich*, 58 S.W.3d 342, 350 (Ark. 2001). Therefore, to state a cause of action for negligent supervision, a plaintiff must plead and prove that the employer had some form of notice that the employee posed a danger to others. *Regions Bank*, 49 S.W.3d at 116.

Here, the complaint includes the following allegations as to Plaintiff's negligent supervision

-19-

claim:  Tankinetics and Strand owed a duty to Plaintiff to properly supervise its officers and management; they "would have . . . known that [Guess, Schwarz, and McManus] are an unreasonable risk of harm to third parties through misrepresentations to their employees, and instruction to illegally discriminate against older employees;" Tankinetics and Strand breached their duty by failing to conduct performance reviews and "failing to take corrective action when employees made oral misrepresentations and gave instruction to illegally discriminate against older workers;" and "Plaintiff suffered unjust results from Defendants' oral misrepresentations and an adverse employment action" from the alleged failure to supervise.

The foregoing allegations do not state a plausible claim that Tankinetics and Strand were negligent in supervising Guess, Schwarz, or McManus.  The complaint does not allege sufficient facts to indicate that Tankinetics and Strand had any prior notice that Guess, Schwarz, or McManus would act in a way that would subject third parties to an unreasonable risk of harm.  Plaintiff alleges that Tankinetics and Strand were put on notice by "misrepresentations to their employees" and "instruction to illegally discriminate."  These are the exact same actions that Plaintiff alleges caused him harm.  It is not just implausible, but impossible for an action to simultaneously occur and provide prior notice that it might occur.  Without alleging that an employer knew or should have known that its employee's conduct posed an unreasonable risk of harm to others, Plaintiff cannot sustain a cause of action for negligent supervision.  *See Regions Bank*, 49 S.W.3d at 116 (rejecting a claim for negligent supervision of an employee where the employee was a newly hired and untrained nurse's aide who sexually assaulted a semicomatose female patient, because there was no notice that the employee posed such a danger and the act was not foreseeable); *Porter v. Harshfield*, 948 S.W.2d 83 (Ark. 1997) (upholding summary judgment for employer on a negligent retention

-20-

claim, where the plaintiff failed to present proof that the employer was on notice that a radiology technician might commit a sexual assault against a patient).

Furthermore, it is unclear what tortious act Plaintiff is alleging that Guess, Schwarz, or McManus committed that could subject Tankinetics and Strand to liability for negligent supervision. In Arkansas, only an employee's *tortious* conduct can subject an employer to liability for failure to supervise.  *See, e.g.*, *Madden*, 58 S.W.3d at 353 (Ark. 2001) (actual fraud); *Regions Bank*, 49 S.W.3d at 116 (sexual assault); *Am. Auto. Auction, Inc. v. Titsworth*, 730 S.W.2d 499, 501 (Ark. 1987) (assault and battery); *see also Montize v. Pittman Props Ltd. P'ship No. 1*, 719 F. Supp. 2d 1052, 1057 (W.D. Ark. 2010) (applying Arkansas law and dismissing claim where Plaintiff failed to plead a tortious act).  The complaint is silent as to any action at all by Schwarz or McManus.  The only tortious action alleged is that Guess constructively defrauded Plaintiff.  Even if constructive fraud could support a claim for negligent supervision,[9] Plaintiff still failed to allege any facts indicating that Tankinetics and Strand had any prior notice that Guess posed a risk of harm to others. *Cf. Madden*, 58 S.W.3d at 352 (even though employer had no personal knowledge of employee's fraudulent intentional misrepresentations to clients, prior complaints about the employee's performance and knowledge that the employee had previously misused client funds put employer on notice of the risk of harm).

In support of his argument that he has sufficiently pleaded a claim of negligent supervision, Plaintiff contends the Supreme Court case of *United States v. Burke*, 504 U.S. 229, 239 (1992), stands for the proposition that "facts plead [sic] by a plaintiff asserting his legal rights were violated

---

[9] The Court is unaware of any Arkansas case law recognizing constructive fraud as a sufficient basis for a negligent supervision claim.

by a defendant and he is entitled to compensatory damages is enough for a tort claim." (Doc. 13, p. 4). The Court finds Plaintiff's reliance on *Burke* is misplaced. In *Burke*, the Supreme Court held that for tax purposes, damages received in settlement of a Title VII claim are not excludable from gross income. *Burke*, 504 U.S. at 242. The issue was whether such damages qualified for special exclusion from gross income under 26 U.S.C. § 104(a) as "damages received . . . on account of personal injuries . . . ." *Id.* at 234. Accordingly, the Court fails to see how *Burke* has any relevance to this Court's consideration of whether the facts alleged in the complaint sufficiently state a claim for negligent supervision under Arkansas common law.

There are no allegations that indicate Tankinetics and Strand had any information that would have led them to conclude that Guess might be predisposed to harm others, much less that he would make recklessly false representations about the duration of Plaintiff's employment. Even if the complaint included such allegations, Plaintiff failed to sufficiently plead proximate cause or damages. Therefore, the Court must dismiss Plaintiff's negligent supervision claim.

## III. Conclusion

For the foregoing reasons, the Court will: (1) grant Defendants' motion to dismiss for insufficient service of process and lack of personal jurisdiction as to Defendants Angle and McManus; (2) grant Defendants' motion to dismiss for failure to state a claim under the ADEA as to Defendants Schwarz and Guess only, and deny it as to Defendant Tankinetics; and (3) grant Defendants' motion to dismiss Plaintiff's promissory estoppel, constructive fraud, and negligent supervision claims as to all Defendants, as Plaintiff has failed to state a claim for relief under Arkansas common law. Although Plaintiff's response included a cursory request for leave to amend the complaint to properly plead a cause of action, the request fails to comply with Local Rule 5.5(e),

and therefore the request is denied.  Accordingly, Defendants Angle, McManus, Guess, and Schwarz should be dismissed as parties to this action, as the Court lacks jurisdiction over Angle and McManus and there are no remaining claims asserted against Guess or Schwarz.  Plaintiff's claims against Defendants Tankinetics and Strand for age discrimination under the ADEA remain.

IT IS HEREBY ORDERED that Defendants' motion to dismiss (Doc. 9) should be GRANTED in part and DENIED in part.  Defendants' motion to dismiss the complaint as to Defendants Angle and McManus is GRANTED for insufficient service of process and lack of personal jurisdiction, and this action is DISMISSED WITHOUT PREJUDICE as to Defendants Angle and McManus.

IT IS FURTHER ORDERED that Defendants' motion to dismiss Count I of the complaint for failure to state a claim for relief under the ADEA is GRANTED as to Defendants Guess and Schwarz, and DENIED as to Defendant Tankinetics.

IT IS FURTHER ORDERED that Defendants' motion to dismiss Count II of the complaint for failure to state a claim for relief under the Arkansas common law of promissory estoppel is GRANTED, and the claim is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendants' motion to dismiss Count III of the complaint for failure to state a claim for relief under the Arkansas common law of constructive fraud is GRANTED, and the claim is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendants' motion to dismiss Count IV of the complaint for failure to state a claim for relief under the Arkansas common law of negligent supervision is GRANTED, and the claim is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED this 24th day of September, 2013.

*/s/ P. K. Holmes,* III

P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE